[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11215

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTHONY MOORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:07-cr-00090-JDW-TGW-1

_____

2              Opinion of the Court       20-11215, 20-11216

_____

No. 20-11216

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTHONY MOORE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:07-cr-00090-JDW-TGW-1

_____

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

BRANCH, Circuit Judge:

Upon the third revocation of his supervised release, Anthony Moore was sentenced to 18 months' imprisonment and an additional 18 months' supervised release. During the revocation proceedings, he was also sentenced to a consecutive term of 6

months' imprisonment for criminal contempt.  On appeal, Moore raises five challenges to his contempt conviction and his revocation and contempt sentences.  *First*, he argues that the district court plainly erred in imposing an additional term of supervised release because it failed to account for the terms of imprisonment that were imposed upon the prior revocations of his supervised release. *Second*, he argues that 18 U.S.C. § 3583(e)—the statute under which he was sentenced upon revocation—is unconstitutional because it allows the district court to extend Moore's sentence beyond the authorized statutory maximum for his offense of conviction based solely on "judge-found facts" in violation of the Fifth and Sixth Amendments as set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).[1]  *Third*, he argues that his revocation sentence is substantively unreasonable.  *Fourth*, he argues that the district court plainly erred in convicting him of criminal contempt without giving him an opportunity to allocute.  *Fifth*, he argues that we should exercise our "inherent supervisory authority" to modify the contempt sentence.

Although the district court plainly erred in imposing an 18-month term of supervised release for Moore's third revocation, § 3583(e)(3) is not unconstitutional as applied to Moore, and the

---

[1] In the alternative, Moore argues that any constitutional concerns can be avoided by reading the text of § 3583(e)(3) as imposing an aggregate limitation on post-revocation imprisonment that caps the total sentence a defendant may serve for revocations and his original sentence at the statutory maximum term authorized for the underlying offense.

district court did not impose a substantively unreasonable sentence. As to Moore's contempt sentence, the district court did not plainly err in convicting Moore of criminal contempt without giving him an opportunity to allocute, and we decline his request for us to modify the contempt sentence. Accordingly, with the benefit of oral argument, we affirm in part and vacate in part Moore's contempt conviction and sentences.

## I.    Background

In 2007, Moore was convicted of possession of several unregistered destructive devices in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. He was sentenced to the statutory maximum for his offense—120 months' imprisonment to be followed by 36 months' supervised release. He completed his term of imprisonment in 2016 and began serving the term of supervised release. Since then, his supervised release has been revoked three times.

In October 2017, after finding Moore guilty of two violations of the terms of his supervised release, the district court revoked Moore's supervised release and sentenced him to 6 months' imprisonment and 24 months' supervised release.[2] In December 2018, the district court revoked Moore's supervised release again due to a new violation and sentenced him to 18 months' imprisonment and 18 months' supervised release. Finally, in March 2020, the district court revoked Moore's supervised release a third time due to

---

[2] Moore appealed the first revocation, and we affirmed the revocation and his sentence. *See United States v. Moore*, 716 F. App'x 934 (11th Cir. 2018).

several new violations, and sentenced him to 18 months' imprisonment and 18 months' supervised release. The district court also sentenced him to a consecutive six-month term of imprisonment for criminal contempt for his conduct during the third revocation hearing. The facts underlying the third revocation are as follows.

In early 2020, Moore was charged with eight violations of the terms of his supervised release, most of which related to drug or alcohol use. The third of the eight violations charged was for failure to notify probation within 72 hours of being questioned by the police. On January 7, 2020, Moore had been questioned by the Tampa Police Department about excessive use of alcohol. According to the police report, Moore was drinking with his work crew supervisor Steven Stearns and another individual on Stearns's boat. Moore drank excessively and later fell asleep on the couch in Stearns's living room. The next morning, Stearns's 5-year-old daughter told Stearns that Moore had "lifted her skirt and attempted to touch her inappropriately." Stearns went into his living room, punched Moore in the face twice, and called the police. When the police arrived, they found Moore lying on the ground intoxicated. The officers interviewed Stearns's daughter, who confirmed the details of the incident. The police declined to arrest Moore at that time.

At the revocation hearing, Moore admitted to all the alleged violations of the terms of his supervised release except the third violation—the failure to notify probation within 72 hours of being

questioned by the police.  Moore explained that he did not remember seeing the police or being questioned but stated that he was willing to admit to it.  The government called Stearns as a witness to testify about whether Moore was questioned by law enforcement.  The district court asked Stearns whether the police tried to question Moore and Stearns responded that "they tried to," but Moore "scream[ed] out that he ain't talking to them."  After the district court confirmed with Moore's probation officer that Moore had failed to notify probation within 72 hours of the incident, it found Moore guilty of all eight violations and revoked his supervised release.

The district court then turned to the question of Moore's sentence.  The maximum sentence the district court could impose was 24 months' imprisonment, under 18 U.S.C. § 3583(e),[3] and the district court calculated Moore's guidelines range to be an "8- to

---

[3] Moore's offense of conviction was punishable by up to ten years' imprisonment, making it a Class C felony.  *See* 26 U.S.C. § 5871; 18 U.S.C. § 3559(a)(3). Under § 3583(e), upon a finding of a violation of the conditions of supervised release, a district court "may revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision." 18 U.S.C. § 3583(e)(3).  However, the statute further provides that "a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison" for a Class C felony. *Id.*  Accordingly, the maximum term of imprisonment that the district court could have imposed for the revocation of Moore's supervised release was 24 months' imprisonment.

14-month term [of imprisonment] and an additional term of supervised release of 36 months, less any jail time." After hearing from Moore, the district court invited Stearns to make a victim impact statement as the father of the victim. Stearns described how his daughter was traumatized by Moore's actions and testified that he believed Moore needed additional supervision. During Stearns's testimony, Moore repeatedly interrupted, accusing Stearns of lying and denying that he did anything to Stearns's daughter.

The government requested an upward variance from the guidelines range, as well as "some term of supervision." After speaking with Moore's probation officer about treatment options, the district court sentenced Moore:

> **The Court:** All right. The factors under 3553(a) of Title 18, to the extent applicable in a revocation hearing, are considered as I determine the appropriate sanction.
>
> It's—it's difficult, Mr. Moore, to determine what is a fair sanction for someone like yourself who has alcohol and drug-abuse addiction. But you've now, because of those addictions, crossed that line that results in you being hospitalized. You may not remember what happened, and it may be something that you can't even conceive ever happened, but—
>
> **Moore:** Yes, sir.
>
> **The Court:** If you interrupt me, sir—
>
> **Moore:** Oh, I'm sorry.

**The Court:** —you're going to spend a lot more time in prison than what you think.

**Moore:** Yes, sir. I'm sorry.

**The Court:** Because I can sentence you to contempt consecutive to the sentence. So it's just time to be quiet and listen.

**Moore:** I'm sorry.

**The Court**: The public needs to be protected. Somebody who gets that drunk, that under the influence, and does something, the public needs to be protected. You need to get help, sir, but you got to want help. Probation has done everything they can do for you, and you've just basically thumbed your nose at it. I doubt anything I do here today is going to change you. The only thing I can hope for is that somehow it gets your attention, and that you are willing to get the help that you need. I don't think you are. Somehow that happens with people.

I do find that a sentence within the advisory range is not sufficient. This is not just a matter of somebody who's suffering from addiction. This is someone who's abused drugs, abused alcohol regularly and continuously, who's been before the Court a number of times for violating supervised release, and now there's an indication in evidence that he committed a—or engaged in conduct which is very serious. May not have constituted a crime, but it was dangerously close. You traumatized a six-year-old.

Having said all that and having considered all of these circumstances, it is the judgment of the Court [that] the defendant be committed to the custody of the Bureau of Prisons for a term of 18 months.  I varied upward f[rom] the Guidelines for the reasons I articulated.  You will then be placed on supervision for 18 months, subject to the standard terms and conditions adopted by this Court.

**Moore:** He's full of shit.  He shouldn't have done that to me, though.  I didn't do nothing to nobody.

**The Court:** Mr. Moore, I now find you in contempt, direct contempt of the Court.

**Moore:** Your Honor, I didn't touch nobody.  Your Honor, all I'm guilty of is being a drug addict.  I'm just—

**The Court:** Would you like to be bound and gagged?  Because that's what's coming next.

**Moore:** No, sir.

**The Court:** Then be quiet.

**Moore:** But, I mean, fair is fair.  I'm just no different than any other drug addict.

**The Court:** You get six more months for contempt of Court, sir, consecutive to the sanction I've just imposed.  Do you have any other questions?

**Moore:** No, sir.  I don't want no trouble.  I'm just trying to explain to you I'm just a regular drug addict.

The court then asked Moore's counsel if she had "anything [she would] like to say on behalf of Mr. Moore." Moore's counsel consulted with Moore and then Moore addressed the court:

> **Moore:** I didn't mess with nobody when I was out there. I just did drugs. I worked every day. I worked six days a week. My apartment was paid for when I left. I never did nothing to nobody. We went to party at this guy's house. I mean, come on. Fair is fair. I mean, damn.

The district court then pronounced its judgment:

> **The Court:** This is a case of direct criminal contempt. Mr. Moore used a profanity when the Court was announcing the sanction. It may have been directed to Mr. Stearns. It may have been directed to the Court. But, nonetheless, it obstructed the Court's proceeding, and I find that a six-month sanction for direct criminal contempt is appropriate consecutive to the sanction that I've announced on the revocation.

The district court then asked Moore's counsel whether she had "any objections to the sanctions imposed in the manner in which it has been pronounced," and Moore's counsel stated that she did not.

In its judgment imposing the sentence for contempt, the district court explained that Moore "obstruct[ed] the proceedings by interrupting the court as it was announcing the sanction for violating the terms and conditions of supervised release, using profanity, and disregarding direct orders of the court." Moore subsequently

appealed from both the revocation sentence and the contempt sentence.

## II.    Discussion

### A.    Revocation Term of Supervised Release

Moore argues that the district court plainly erred in imposing a term of supervised release because it failed to account for the terms of imprisonment he had already served for prior revocations. The government agrees and concedes that the district court plainly erred.[4]

We review the district court's imposition of a term of supervised release for plain error because Moore failed to object to it below. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). "The plain-error test has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (alteration adopted) (quotation omitted); *see* Fed. R. Crim. P. 52(b). Moore has demonstrated all four prerequisites

---

[4] Although we are not required to accept the government's concession, *see United States v. Linville*, 228 F.3d 1330, 1331 n.2 (11th Cir. 2000), we agree with Moore and the government that the district court plainly erred in imposing a term of supervised release here.

here, and, therefore, the error warrants exercise of our discretion to correct it.

Section 3583(h) provides:

When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment.  The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, *less any term of imprisonment that was imposed upon revocation of supervised release.*

18 U.S.C. § 3583(h) (emphasis added).  In *United States v. Mazarky*, 499 F.3d 1246, 1250 (11th Cir. 2007), we held that, under § 3583(h), "the maximum allowable supervised release following multiple revocations must be reduced by the aggregate length of any terms of imprisonment that have been imposed upon revocation."

Moore's maximum term of supervised release upon his original conviction was 36 months.  *See* 18 U.S.C. § 3583(b)(2), 26 U.S.C. § 5871.  And he was sentenced to a total of 42 months' imprisonment for his prior revocations.  Thus, under § 3583(h), because he had already served a term of imprisonment for prior revocations in excess of the statutory maximum amount of supervised release, the district court was not authorized to impose any additional supervised release and it was error for the district court to do so.

This error was plain in light of § 3583(h) and *Mazarky*; it affected Moore's substantial rights because it exposed him to an unauthorized term of supervised release (18 months), and it "undermines the fairness, integrity, or public reputation of judicial proceedings," because it resulted in an "unnecessary deprivation of liberty," *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018). Accordingly, we vacate the supervised release portion of Moore's sentence.

B.    Revocation Term of Imprisonment

Moore also argues that § 3583(e) violates the Fifth and Sixth Amendments as applied to him because it allows the district court to extend Moore's sentence beyond the authorized statutory maximum for his offense of conviction based solely on "judge-found facts," in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).[5]  Moore does not

---

[5] Specifically, Moore argues that when his sentence is viewed in the aggregate—meaning his original sentence combined with the sentence imposed upon each revocation of supervised release—it totals 13.5 years which exceeds the authorized statutory maximum of 13 years (based on combining the statutory maximum term of imprisonment and the statutory maximum term of supervised release).  Thus, he argues that 18 U.S.C. § 3583(e)(3) is unconstitutional, as applied to him, because it allows the district court to extend his sentence beyond the authorized statutory maximum for his offense of conviction based solely on "judge-found facts," in violation of the Fifth and Sixth Amendments as set forth in *Apprendi* and *Alleyne*.

Alternatively, he argues that the constitutional concerns he has identified can be avoided if we interpret § 3583(e)(3) as imposing an aggregate limitation on

dispute that he did not raise this argument in the district court; therefore, we review for plain error.

Once again, "[t]he plain-error test has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Madden*, 733 F.3d at 1320 (alteration adopted) (quotation omitted).  For an error to be plain:

> [T]he legal rule [must be] clearly established at the time the case is reviewed on direct appeal.  Where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.  Such error must be so clearly established and obvious that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it.

*United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (quotations and internal citations omitted).  For the reasons that follow, Moore's claim fails because he cannot establish that there was an error, or that, even assuming that an error occurred, it was plain.

---

revocation sentences that caps the total sentence a defendant may serve at the statutory maximum for the underlying offense.

As always, our starting point is the statutory text. Section 3583(e)(3) provides, in relevant part:

> The court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison if such offense is a class C or D felony . . . .

Nothing in the text of § 3583(e) provides that the full panoply of rights provided for in the Fifth or Sixth Amendments apply to § 3583(e) revocation proceedings. And nothing in the text provides that the total time a defendant may serve for his original conviction and revocations of supervised release cannot exceed the combined statutory maximum terms of imprisonment and supervised release for the original offense of conviction. Thus, the statutory text does not establish that a plain error occurred in this case. Accordingly, we must determine whether there is a Supreme Court case or a case from this Court directly resolving the issue.

In *Morrissey v. Brewer*, the Supreme Court held that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." 408 U.S. 471, 480 (1972). The Court then went on to hold that only minimal due process rights apply in revocation of parole proceedings, such as notice, a hearing before a neutral decisionmaker, and an opportunity for the defendant to be heard. *Id.* at 487–88. Thereafter, the Supreme Court held in *Johnson v. United States*, 529 U.S. 694, 700 (2000), that the Sixth Amendment right to a jury trial is not applicable during revocation proceedings because revocation of supervised release is treated "as part of the penalty for the initial offense" and that "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard."

Following *Johnson*, however, in the context of initial criminal proceedings, the Supreme Court held that, under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Subsequently, in *Alleyne*, the Supreme Court extended *Apprendi* and held that any facts that increase a mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt. 570 U.S. at 116. Thus, Moore argues that § 3583(e) plainly violates the Fifth and Sixth Amendments as applied to him

because the district court imposed a sentence beyond the statutory maximum based solely on judge-found facts in violation of *Apprendi* and *Alleyne*.[6]  But neither *Apprendi* nor *Alleyne* dealt with revocation proceedings, and, therefore, those decisions do not directly resolve the issue presented in this case for purposes of establishing plain error.  Furthermore, Moore concedes that, in *United States v. R. Scott Cunningham*, we joined several of our sister circuits in holding that *Apprendi* does not apply to revocation proceedings under § 3583(e)(3), and that "§ 3583(e)(3) is constitutional under the Fifth and Sixth Amendments."  607 F.3d 1264, 1265, 1268 (11th Cir. 2010) (per curiam).  Specifically, after examining pre- and post-*Apprendi* precedent from the Supreme Court and other circuits, we held that "3583(e)(3) does not violate the Fifth or Sixth Amendments because the violation of supervised release need only be proven by a preponderance of the evidence, and there is no right to trial by jury in a supervised release revocation hearing."  *Id.*  Under our prior-precedent rule, *Cunningham* binds us unless it is overruled or undermined to the point of abrogation by this Court sitting en banc or by the Supreme Court.  *See United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003).

---

[6] Section 3583(e)(3) does not present any *Alleyne* problem because it does not impose any mandatory minimum term of imprisonment based on judicial fact-finding.  *See* 18 U.S.C. § 3583(e)(3); *see also United States v. Haymond*, 139 S. Ct. 2369, 2383–84 (2019) ("Section § 3583(e), which governs supervised release revocation proceedings generally, does not contain any similar mandatory minimum triggered by judge-found facts.").  Thus, although Moore cites both *Apprendi* and *Alleyne*, his argument revolves solely around *Apprendi*.

Notwithstanding *Cunningham*'s holding that *Apprendi* does not apply to § 3583(e)(3) proceedings and that § 3583(e)(3) does not violate the Fifth and Sixth Amendments, Moore argues that the Supreme Court's more recent, fractured decision in *United States v. Haymond*, 139 S. Ct. 2369 (2019) (plurality opinion), establishes that a § 3583(e)(3) revocation sentence that results in a total sentence that exceeds the statutory maximum is plainly unconstitutional under the Fifth and Sixth Amendments. Moore's argument fails, as *Haymond* addressed a different subsection of § 3583, and, therefore, does not directly resolve the issue at hand for purposes of plain error review.

Specifically, in *Haymond*, the Supreme Court struck down 18 U.S.C. § 3583(k), which required a district court to impose a minimum term of incarceration upon a finding of certain violations of supervised release. 139 S. Ct. at 2374. However, the plurality clarified that its "decision [was] limited to § 3583(k) . . . and the *Alleyne* problem raised by [§ 3583(k)'s] 5-year mandatory minimum term of imprisonment." *Id.* at 2383. *Haymond* did not address whether § 3583(k), much less § 3583(e), was consistent with *Apprendi*. *Id.* at 2382 n.7 ("[W]e have no occasion to decide whether § 3583(k) implicates *Apprendi* . . . [and] we do not pass judgment one way or the other on § 3583(e)'s consistency with *Apprendi*.").

Thus, *Haymond* has no direct application to the issue before us which involves § 3583(e).[7]

And perhaps more importantly, while the *Haymond* plurality relied on *Alleyne*—an *Apprendi* progeny case—to conclude that § 3583(k) was unconstitutional, Justice Breyer's concurrence in *Haymond*, which is the controlling opinion, did not.[8]  *Id.* at 2385–86 (Breyer, J., concurring).  Justice Breyer's concurrence in *Haymond* is narrower than the plurality opinion because he does not "transplant the *Apprendi* line of cases to the supervised-release context"—therefore, it is the controlling opinion.  *Id.*  Thus, *Haymond* does not establish that plain error occurred in Moore's case.[9]

---

[7] The concurrence agrees that *Haymond* does not implicate § 3583(e), and, therefore, cannot establish plain error in this case for purposes of Moore's *Apprendi* claim.

[8] *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as the position taken by those Members who concurred in the judgment[] on the narrowest grounds."); *see also Haymond*, 139 S. Ct. at 2386 (Alito, J., dissenting) (stating that Justice Breyer's concurrence contains "today's holding"); *United States v. Watters*, 947 F.3d 493, 497 (8th Cir. 2020) ("Justice Breyer's opinion is the narrower opinion[ ] and therefore controls.").

[9] Despite the dissent's arguments that there was an *Apprendi* violation here, if the Supreme Court itself did not see fit to "transplant" the entire body of *Apprendi* jurisprudence to the supervised release criminal scheme in *Haymond*, we do not see how we could do so under these circumstances given our *Cunningham* decision *and* that we are on plain error review.

The concurrence and dissent argue that *Cunningham* does not "control" here because the *Apprendi* argument before the *Cunningham* panel was different and it did not have the opportunity to consider the argument Moore presents—whether *Apprendi* and its progeny apply to § 3583(e)(3) proceedings where the revocation of supervised release and imposition of a new term of imprisonment results in a combined sentence that exceeds the statutory maximum for the original offense.

As we explained previously, however, *Cunningham* announced a broad ruling that "3583(e)(3) does not violate the Fifth or Sixth Amendments because the violation of supervised release need only be proven by a preponderance of the evidence, and there is no right to trial by jury in a supervised release revocation hearing."  607 F.3d at 1268.  Thus, we rejected the application of *Apprendi* in the context of § 3583(e)(3) proceedings.  To be sure, the dissent is correct that the *Cunningham* court did not have the benefit of the particular *Apprendi* argument raised here, but that makes no difference under the prior-panel-precedent rule.  *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) ("We have held that a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel. . . .  In short, we have categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." (quotations and internal citations omitted)); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000) ("Unless and until the holding of a prior decision is overruled by the Supreme Court or

by the en banc court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.").

Regardless, even if the concurrence and dissent are correct that *Cunningham* did not address Moore's precise claim, neither did *Apprendi* or *Haymond*. And Moore has not presented us with any authority—much less controlling authority—directly resolving the issue in this case. It is this absence of controlling authority that is fatal to Moore's claim because an error cannot be plain if there is "no precedent from the Supreme Court or this Court directly resolving [the issue]." *Hesser*, 800 F.3d at 1325.

Accordingly, for all of these reasons, Moore's claim fails on plain error review.[10]

C.      Reasonableness of the Revocation Sentence

Next, Moore argues that his revocation sentence was substantively unreasonable. We review the substantive reasonableness of a sentence imposed upon revocation of supervised release for abuse of discretion, based on the totality of circumstances.

---

[10] Alternatively, Moore also argues that § 3583(e) should be construed to impose an aggregate limit on post-revocation imprisonment—meaning that a defendant's aggregate post-revocation sentence is capped at the statutory maximum term for the underlying offense. But as discussed above, nothing in the text of § 3583(e) expressly imposes an aggregate limit on post-revocation imprisonment, and once again Moore fails to cite to any controlling authority from the Supreme Court or this Court that resolves this issue. Thus, he has failed to demonstrate plain error.

*United States v. Trailer*, 827 F.3d 933, 935–36 (11th Cir. 2016) (per curiam). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted). We will vacate a sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quotation omitted). A district court may vary upward from the guidelines range "when the court determines that a guidelines sentence will not adequately further the purposes reflected in 18 U.S.C. § 3553(a)." *United States v. Hall*, 965 F.3d 1281, 1295 (11th Cir. 2020); *see United States v. Shaw*, 560 F.3d 1230, 1240 (11th Cir. 2009).

The guidelines range for Moore's offenses was 8 to 14 months' imprisonment and the district court sentenced him to 18 months' imprisonment—a 4-month upward variance. But we cannot say that Moore's revocation sentence was an abuse of discretion. As the district court noted, Moore had "abused drugs, abused alcohol regularly and continuously" and had "been before the Court a number of times for violating supervised release." He had committed eight violations of supervised release within a few months of starting his third term of supervised release. And the

district court noted that there was "an indication in evidence that he committed a—or engaged in conduct which is very serious. May not have constituted a crime, but it was dangerously close. [Moore] traumatized a six-year-old." In other words, he continued to re-offend after already having served 6- and 18-month terms of imprisonment for prior revocations. The district court was within its discretion to determine that a 4-month upward variance was necessary to deter Moore and to protect the public. *See United States v. Hunt*, 941 F.3d 1259, 1264 (11th Cir. 2019); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256–57 (11th Cir. 2015).

Moore argues that the district court erred by giving "dispositive weight" to Stearns's testimony. But the sentencing transcript reveals that the district court considered the other § 3553(a) factors and did not give Stearns's testimony dispositive weight.[11] Nor has Moore demonstrated that the district court committed a clear error of judgment in considering the § 3553(a) factors. Accordingly, Moore's sentence was not substantively unreasonable.

---

[11] Moore also argues that the district court erred in admitting Stearns's testimony without finding that it was reliable or providing him an opportunity to cross-examine Stearns under *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). Federal Rule of Criminal Procedure 52(a) provides that a harmless error—an "error, defect, irregularity, or variance that does not affect substantial rights"—"must be disregarded." Regardless of whether the district court's decision to admit Stearns's testimony was error, we conclude that any such error was harmless because "the properly considered evidence overwhelmingly demonstrated that [Moore] breached the terms of his supervised release." *Frazier*, 26 F.3d at 114.

D.      Contempt Conviction

Next, Moore contends that the district court plainly erred in convicting him for criminal contempt because it failed to give him an opportunity to allocute before it sentenced him.  Because Moore failed to object below, we review the district court's decision for plain error.  *Rodriguez*, 398 F.3d at 1298.

The Federal Rules of Criminal Procedure provide that a district court may punish criminal contempt committed in its presence "summarily"—that is, "without delaying to provide for formal charges or a formal trial," *United States v. Browne*, 318 F.3d 261, 265 (1st Cir. 2003)—if the court "saw or heard the contemptuous conduct and so certifies," *see* Fed. R. Crim. P. 42(b); *see also* 18 U.S.C. § 401(1) ("A court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.").  In *Ex parte Terry*, 128 U.S. 289, 307–14 (1888), the Supreme Court held that a court may hold a defendant in summary contempt without notice or a prior opportunity to be heard.

Moore argues that *United States v. Brannon*, 546 F.2d 1242 (5th Cir. 1977), and *Taylor v. Hayes*, 418 U.S. 488 (1974), establish that the district court was required to provide him an opportunity to allocute before it sentenced him.  In *Brannon*, we wrote that "notice and at least a brief opportunity to be heard should be afforded as a matter of course" in criminal contempt proceedings.

546 F.2d at 1249; *see id.* ("[E]ven if the trial judge here had not waited as long as he did but had proceeded immediately to find the appellant in contempt, he should have first explicitly warned the appellant of the consequences of his continued refusals and should have afforded him the right of allocution."). And in *Taylor*, the Supreme Court wrote that:

> [R]easonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are basic in our system of jurisprudence. Even where summary punishment for contempt is imposed during trial, the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.

418 U.S. at 498 (quotations and internal citation omitted).

But *Brannon* and *Taylor* speak of norms, not absolute rules. *See Brannon*, 546 F.2d at 1249 (stating "notice and at least a brief opportunity to be heard *should be* afforded as a matter of course" (emphasis added)); *see also Taylor*, 418 U.S. at 498 ("Even where summary punishment for contempt is imposed during trial, the contemnor *has normally been given* an opportunity to speak in his own behalf in the nature of a right of allocution." (emphasis added) (quotations and internal citations omitted)). Because no precedent from the Supreme Court or this Court directly establishes that

Moore had the right to allocute before being held in summary contempt, he has failed to demonstrate plain error. *See Hesser*, 800 F.3d at 1325.[12]

    E.     Moore's Contempt Sentence

Finally, Moore argues that we should exercise our "inherent supervisory authority" to reduce his contempt sentence.[13] Moore contends that a sentence of six months' imprisonment—the maximum punishment that the district court could impose without a jury trial, *see Cheff v. Shnackenberg*, 384 U.S. 373, 380 (1966)—was unreasonable because he had "accepted responsibility for his violations, had been respectful before the court in the past, and had apologized for his minor interruption."

But the district court did not abuse its discretion in imposing a six-month sentence. Moore admits that he interrupted the proceedings to interject: "He's full of shit. He shouldn't have done

---

[12] The government contends that the district court gave Moore an opportunity to speak on his own behalf before imposing punishment. Because we conclude that Moore failed to demonstrate plain error, we do not address this argument.

[13] *See Cheff v. Shnackenberg*, 384 U.S. 373, 380 (1966) (describing "the peculiar power of federal courts to revise sentences in contempt cases"). The government maintains that Moore must still demonstrate plain error irrespective of this "peculiar power." We need not resolve whether plain error review applies here because, even under the lower abuse-of-discretion standard, the district court did not abuse its discretion in imposing the contempt sentence.

20-11215, 20-11216    Opinion of the Court                27

that to me, though.  I didn't do nothing to nobody."  And his disruptions were not as he asserts limited to a "single isolated use of street vernacular."  Rather, he had already interrupted the court several times, and persisted in arguing with the district court even after he had been convicted of criminal contempt.  The district court was in the best position to evaluate the disruptive effect of Moore's conduct, *cf. Messer v. Kemp*, 760 F.2d 1080, 1087 (11th Cir. 1985), and the Supreme Court has affirmed longer sentences for contempt (albeit, following a jury trial), *see Green v. United States*, 356 U.S. 165, 188–89 (1958) (three-year sentence).  Because Moore has failed to demonstrate that the district court abused its discretion in imposing a six-month sentence for contempt, we decline his request for us to modify that sentence.

## III.    Conclusion

For these reasons, we affirm Moore's 18-month revocation sentence and six-month contempt sentence but vacate the term of post-revocation supervised release.

**AFFIRMED IN PART AND VACATED IN PART.**

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    1

LAGOA, Circuit Judge, Concurring in part and in the result:

I concur in full in Parts II.A., II.C., II.D., and II.E. of the majority opinion.  However, I concur in result only as to Part II.B. of the majority opinion, which affirms the district court's decision to sentence Moore to 18 months' imprisonment for the third revocation of his supervised release, resulting in a cumulative total of 162 months' imprisonment for both the underlying offense and the three revocations of supervised release.  That holding raises two issues: (1) whether district courts can impose a term of imprisonment for the revocation of supervised release that, together with the term of imprisonment already served for the underlying crime, exceeds the statutory maximum sentence the defendant faced at the time of sentencing—i.e., the statutory maximum term of imprisonment for the underlying offense (in this case, 120 months) plus the statutory maximum period of supervised release (in this case, 36 months); and (2) whether the district court plainly erred in sentencing Moore to such 18 months' imprisonment.

Moore's counsel did not preserve these issues for appeal, and both the majority and the dissent therefore agree that the district court's sentence is reviewed for plain error.  I agree that this is the proper standard of review.  And, as explained below, I believe that the standard of review makes the difference in this case.  While the majority opinion also concludes that the district court did not plainly err, I write separately because, unlike the majority opinion, I believe that the issues Moore has raised are issues of first impression without controlling precedent from this Court.

2  LAGOA, J., Concurring in part and in result    20-11215, 20-11216

As noted in *Andrews* v. *Warden*, a "'sentence,' refers to all sanctions imposed for a crime, and a sentence can have multiple components, including imprisonment, supervised release, and fines." 958 F.3d 1072, 1080 (11th Cir. 2020). Thus, when we talk about a statutory maximum sentence, we must consider the maximum potential sentence a defendant faced when taking into consideration the various components of the sentence. As relevant here, it is the term of imprisonment and the term of supervised release.

In 2007, Moore was convicted of possession of several unregistered destructive devices in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Pursuant to these violations, Moore faced, and was sentenced to, the statutory maximum sentence consisting of a 120-month term of imprisonment followed by a 36-month term of supervised release—in other words, a maximum sentence of 156 months. Moore completed his term of imprisonment in 2016 and then began serving the 36 months' term of supervised release.

In October 2017, the district court revoked Moore's supervised release and sentenced him to 6 months' imprisonment. In December 2018, the district court again revoked Moore's supervised release and sentenced Moore to 18 months' imprisonment. And in March 2020, the district court revoked Moore's supervised release for a third time and sentenced him to 18 months' imprisonment. Thus, as a result of this most recent revocation, Moore now faced a total of 162 months in prison—his initial 120-month term of imprisonment plus a total of 48 months' imprisonment arising

20-11215, 20-11216 LAGOA, J., Concurring in part and in result      3

from the three separate revocations.  That exceeds by 6 months the statutory maximum sentence Moore faced for the underlying offense.

## I.    Do Prior Precedents Address Whether District Courts Can Impose a Cumulative Sentence of Imprisonment that Exceeds the Statutory Maximum Sentence the Defendant Faced at the Time of Sentencing?

Moore asserts that 18 U.S.C. § 3583(e) is unconstitutional to the extent that it allowed the district court to extend his "cumulative sentence of imprisonment"—i.e., imprisonment for the underlying offense plus the cumulative imprisonment for all revocations of supervised release—beyond the statutory maximum sentence of 156 months, based solely on "judge found facts."  The relevant provision is 18 U.S.C. § 3583(e)(3), which states that:

> The court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the

4  LAGOA, J., Concurring in part and in result     20-11215, 20-11216

> offense that resulted in the term of supervised release
> is a class A felony, more than 3 years in prison if such
> offense is a class B felony, more than 2 years in prison
> if such offense is a class C or D felony, or more than
> one year in any other case . . . .

The majority opinion suggests that this Court's decision in *United States v. R. Scott Cunningham*, 607 F.3d 1264 (11th Cir. 2010) forecloses Moore's argument. Maj. Op. at 17. I agree with the dissent that this Court's decision in *R. Scott Cunningham* does not address the issue Moore raises and therefore is not grounds for affirming the 18-month sentence at issue. Diss. Op. at 8–10. In *R. Scott Cunningham*, the defendant contended that § 3583(e)(3) is unconstitutional because "there is no principled basis to exempt § 3583(e)(3) from *Apprendi*'s mandates because the revocation of supervised release commonly results in substantial terms of incarceration unsupported by a jury's findings." 607 F.3d at 1267. This Court noted that the pre-*Apprendi*[1] revocation of parole was "not part of a criminal prosecution" implicating "the full panoply of rights" and that the Supreme Court has held that revocation proceedings do not implicate the Sixth Amendment "because revocation of supervised release is treated 'as part of the penalty for the initial offense.'" *Id.* (first quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); then quoting *Johnson v. United States*, 529 U.S. 694, 700 (2000)). This Court concluded, consistent with other cir-

---

[1] *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    5

cuits, that because the defendant was "already convicted of the underlying offense . . . and was granted only conditional liberty, the existence of which depend[ed] on [the defendant's] observation of the limits of his supervised release" imprisonment for the revocation of supervised release pursuant to § 3583(e)(3) "does not violate the Fifth or Sixth Amendments." *Id.* at 1268.

But that is not the issue addressed here. Moore does not contend that he was entitled to full due process and a jury trial because the court revoked his supervised release and sentenced him to additional imprisonment. Instead, Moore challenges the district court's ability to impose a cumulative sentence, for multiple violations of supervised release and the underlying offense, that exceeds the statutory maximum sentence he faced for the underlying offense. This Court did not address that issue in *R. Scott Cunningham*, and I therefore believe that the majority opinion's reliance on *R. Scott Cunningham* is misplaced.

Post-*R. Scott Cunningham*, this Court has stated that courts have the "power under [§] 3583(e)(3) to impose an additional term of imprisonment even though [the defendant] had already served the maximum statutory sentence for his offense." *United States* v. *Sharpe*, No. 20-13808, 2021 WL 4452532, at *2–3 (11th Cir. Sept. 29, 2021). But in *Sharpe*, like in *R. Scott Cunningham*, this Court was not faced with a revocation sentence that resulted in a cumulative sentence of imprisonment that exceeded the statutory maximum sentence—which is different from the maximum statutory sentence for the underlying offense because the maximum potential

6  LAGOA, J., Concurring in part and in result    20-11215, 20-11216

sentence is inclusive of both the maximum statutory sentence and the maximum term of supervised release. In *Sharpe*, the defendant faced a statutory maximum sentence consisting of a 10-year term of imprisonment plus a lifetime term of supervised release—i.e., a potential lifetime statutory maximum sentence. *Id.* at *1. And, upon revocation of his supervised release, the defendant was sentenced to 24 months' imprisonment. *Id.*

Nor do other post-*R. Scott Cunningham* cases from this Court resolve the issue. For example, in *United States* v. *John A. Cunningham*,[2] this Court interpreted § 3583(e)(3)—specifically the phrase "*on any such revocation*"—to mean "that upon each revocation of supervised release a defendant may be sentenced to the felony class limits contained within § 3583(e)(3) without regard to imprisonment previously served for revocation of supervised release."[3] 800 F.3d 1290, 1293 (11th Cir. 2015). The defendant in *John A. Cunningham* faced a statutory maximum sentence of 156 months—a maximum term of imprisonment of 120 months and a maximum term of supervised release of 36 months. 800 F.3d at

---

[2] References to this case use the defendant's full name to distinguish this case from the *R. Scott Cunningham* case.

[3] While one could argue that the phrase "*serve . . . all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release*" creates an upper limit, *see* § 3583(e)(3) (emphasis added), whereby the maximum imprisonment for all violations of supervised release is the maximum supervised release authorized by statute for the underlying offense, the facts and conclusion reached in *John A. Cunningham* are contrary to that interpretation.

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    7

1290–91; *see* 18 U.S.C. § 2250(a).  The defendant was sentenced to a term of imprisonment of 30 months, but, as a result of three violations of his supervised release, he received revocation sentences totaling 46 months' imprisonment.  Although the revocation sentences cumulatively exceeded the statutory maximum term of supervised release for the underlying sentence,[4] *id.* at 1291, the defendant's cumulative sentence of imprisonment (76 months) was less than the statutory maximum sentence (156 months).  *Id.* at 1291.  Therefore, this Court did not reach the issue presented here: whether the cumulative sentence of imprisonment—inclusive of all sentences for revocation of supervised release—can exceed the statutory maximum sentence.

A few additional cases touch upon the issue raised here, but none conclusively address the issue. For example, in *Andrews* v. *Warden*, this Court explained that:

> 18 U.S.C. § 3583(e)[] allows the reimprisonment of defendants who violate conditions of supervised release

---

[4] Moreover, in rejecting the defendant's argument that § 3583(e)(3) implicitly contains an aggregation limitation, this Court held that "§ 3583(h) places an indirect constraint upon the total amount of revocation imprisonment a defendant may receive . . . by limiting post-imprisonment supervision."  800 F.3d at 1293.  In other words, the majority opinion's holding in II.A. that "the district court was not authorized to impose any additional supervised release" because Moore "already served a term of imprisonment for prior revocations in excess of the statutory maximum amount" is the cap that "ensures that a defendant is not at risk for an unlimited cycle of imprisonment and supervised release." *John A. Cunningham*, 800 F.3d at 1292.

8  LAGOA, J., Concurring in part and in result     20-11215, 20-11216

even when they were initially sentenced to the statutory maximum term.  For example, a defendant might initially be sentenced to the statutory maximum term of 15 years of imprisonment and to a term of two years of supervised release.  Upon completing his 15-year term of imprisonment, the defendant might then commit another crime a year into serving his supervised release.  A district court would be well within its power to order that defendant to serve the remainder of his supervised release in prison, which would be a term of imprisonment that is part of his original sentence but not his original term of imprisonment.  That defendant would then serve 16 years in prison despite that the statutory maximum for his underlying crime allowed for only 15 years of imprisonment. The terms of imprisonment are distinct components of his sentence.

958 F.3d at 1080 (citations omitted).  This statement endorses the dissent's assertion that "pursuant to a single conviction" a court can impose both a term of imprisonment and a term of supervised release and later convert "all or part of the defendant's supervised-release term into a prison term." *See* Diss. Op. at 4.  But it does not go a step further and explicitly stand for the proposition that the initial term of supervised release plus the prison term for the underlying offense act as a ceiling for the defendant's total period of confinement.

Next, in *United States* v. *Cameron*, the defendant argued that a post-revocation sentence of 24 months was unconstitutional

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    9

because, together with the 108 months imprisonment he served for the underlying offense, he would serve 132 months' imprisonment for an underlying offense that carried a statutory maximum of 120 months' imprisonment. 808 F. App'x 1020, 1020–21 (11th Cir. 2020). This Court found that the defendant invited the alleged error by specifically requesting a term of imprisonment (18 months) that resulted in a sentence exceeding the statutory maximum for the underlying offense. *Id.* This Court also held that: (1) the defendant could not prevail because in *R. Scott Cunningham* the Court found that § 3583(e)(3) is constitutional; and (2) the Supreme Court's ruling in *United States v. Haymond*, 139 S. Ct. 2369 (2019), was limited to § 3583(k). *Id.* This Court was not asked, and therefore did not address, whether a sentence could exceed the statutory maximum sentence.

And, in *United States* v. *Horne*, the defendant similarly argued that a 21-month sentence for violating supervised release, together with the time served for the underlying offense, exceeded the statutory maximum sentence. 789 F. App'x 139, 142 (11th Cir. 2019). This Court rejected this argument, again holding that there is "no violation of [the defendant's] Fifth and Sixth Amendment rights when the district court imposed a new term of imprisonment that exceeded the statutory maximum sentence available for his original crime of conviction without conducting a jury trial." *Id.* at 143. In *Horne*, the defendant was initially sentenced to 180 months' imprisonment and 60 months' supervised release. *Id.* at 140. After serving 132 months, he successfully sought to vacate his

10  LAGOA, J., Concurring in part and in result    20-11215, 20-11216

remaining sentence because the Supreme Court invalidated the Armed Career Criminal Act's ("ACCA") residual clause, and his sentence was reduced to time served and 36 months' supervised release. *Id.* Upon violating supervised release, the defendant was sentenced to 21 months' imprisonment, resulting in a cumulative total imprisonment of 153 months. *Id.* at 140–41. Assuming that, without the ACCA's enhancement, the statutory maximum sentence for the underlying offense was 156 months—a 120 month term of imprisonment and a 36 month term of supervised release— defendant's cumulative sentence was still below the statutory maximum sentence.

As these cases indicate, it is well settled that: (1) a court may impose a sentence of imprisonment for violating supervised release, that together with the term of imprisonment initially imposed for the underlying offense, exceeds the statutory maximum term of imprisonment for the underlying offense; and (2) upon each revocation of supervised release a defendant may be sentenced to the felony class limits specific to the underlying offense. But these cases do not address whether the cumulative sentence of imprisonment—inclusive of all sentences for revocation of supervised release and for the underlying offense—can exceed the statutory maximum sentence consisting of both the maximum term of imprisonment plus the maximum term of supervised release.

The dissent raises two arguments based on Supreme Court decisions as to why we should find plain error here: (1) that subjecting Moore to a sentence in excess of the statutory maximum

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    11

sentence "violated foundational American law, embodied (most recently, but hardly exclusively) in *Apprendi* and its progeny," *see* Diss. Op. at 8; and (2) that the three *Haymond* opinions (plurality, concurrence, and dissent) all agree "that a judge can't impose a total prison term exceeding the maximum prison term *plus* the maximum supervised-release term," *see* Diss. Op. at 5–7.

The question presented in *Apprendi* was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." 530 U.S. at 469. The Supreme Court explained that:

> "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt[,]" [and] [t]he Fourteenth Amendment commands the same answer."

*Id.* at 476 (citation omitted) (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)). The Supreme Court further noted that the statutory scheme at issue was problematic because it "expose[d] the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* at 482–83. The Supreme Court also identified the following guiding principle: "practice must at least

12  LAGOA, J., Concurring in part and in result    20-11215, 20-11216

adhere to the basic principles undergirding the requirements of try-
ing to a jury all facts necessary to constitute a statutory offense, and
proving those facts beyond reasonable doubt." *Id.* at 483–84.  But
*Apprendi* did not address whether a defendant is entitled to a trial
by jury for imprisonment imposed due to a violation of supervised
release.[5]

This Court has repeatedly held that *Apprendi* and its prog-
eny do not implicate additional post-revocation safeguards because
"a defendant in a supervised-release revocation proceeding 'stands
already convicted' of the underlying criminal offense and 'was
granted only conditional liberty' dependent upon the defendant's
compliance with the conditions of supervised release."  *E.g.,*
*Sharpe*, 2021 WL 4452532, at *3 (quoting *R. Scott Cunningham*,
607 F.3d at 1268).  Under these cases, *Apprendi* does not apply to

---

[5] After *Apprendi*, the Supreme Court held that "[t]he decision to impose sen-
tences consecutively is not within the jury function." *Oregon* v. *Ice*, 555 U.S.
160, 168 (2009).  In so holding, the Supreme Court explained that "*Apprendi*'s
core concern [is] a legislative attempt to 'remove from the [province of the]
jury' the determination of facts that warrant punishment for a specific statu-
tory offense" and that legislative reforms regarding the imposition of multiple
sentences do not implicate that core concern because "[t]here [was] no en-
croachment here by the judge upon facts historically found by the jury, nor
any threat to the jury's domain as a bulwark at trial between the State and the
accused." *Id.* at 169–70 (second alteration in original) (quoting *Apprendi*, 530
U.S. at 490.  The Supreme Court also identified "the length of supervised re-
lease" as an example of where trial judges "find facts about the nature of the
offense or the character of the defendant." *Id.* at 171–72.  But that statement
neither supports, nor weighs against, the majority opinion.

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    13

post-revocation proceedings because guilt for the underlying offense has already been established and supervised release is a component of the penalty for that offense. That view is supported by the plurality opinion in *Haymond*, in which the plurality "acknowledge[d] that an accused's final sentence includes any supervised release sentence he may receive" and noted that the Court had "already recognized that supervised release punishments arise from and are 'treat[ed] . . .as part of the penalty for the initial offense.'" *Haymond*, 139 S. Ct. at 2379–80 (plurality opinion) (quoting *Johnson*, 529 U.S. at 700).

The question that remains is whether cumulative sentences for violating supervised release, that result in a term of imprisonment that exceeds the statutory maximum sentence, constitute a "penalty *exceeding* the maximum [the defendant] would receive if punished according to the facts reflected in the jury verdict alone." *Apprendi*, 530 U.S. at 482–83. But *Apprendi* does not directly resolve this question, which is what is required for us to find plain error.

As this Court has already found in other cases, the plurality opinion in *Haymond* was "'limited to § 3583(k) . . . and the *Alleyne* [*v. United States*, 570 U.S. 99 (2013),] problem raised by its 5-year mandatory minimum term of imprisonment,' and declined expressly to address the constitutionality of section 3583(e)." *See, e.g.*, *Sharpe*, 2021 WL 445232, at *3 (quoting *Haymond*, 139 S. Ct. at 2383 (plurality opinion)); *Cameron*, 808 F. App'x at 1021 ("[I]n *Haymond*, the Supreme Court invalidated only § 3583(k).");

14  LAGOA, J., Concurring in part and in result   20-11215, 20-11216

*Horne*, 789 F. App'x at 143 ("*Haymond* explicitly reserved the question whether § 3583(e)(3) violates *Apprendi*."). And as the majority opinion correctly notes, *see* Maj. Op. at 19, Justice Breyer's concurrence which, together with the plurality, forms the majority opinion in *Haymond* on that issue, is "specific [to the § 3583(k) provision] of the supervised-release statute" and specifically states that it does not "transplant the *Apprendi* line of cases to the supervised-release context." 138 S. Ct. 2385–86 (Breyer, J., concurring). Therefore, it cannot be said that *Haymond* limits sentences imposed under § 3583(e)(3) to the statutory maximum sentence.

The issue raised here appears to be a question of first impression and the precedents cited to by both the majority opinion and the dissent are unavailing regarding how this Court should rule. As noted, the panel all agree that the proper standard of review in this case is plain error. I will therefore address whether the district court plainly erred by sentencing Moore to 18 months' imprisonment for his third violation of supervised release.

## II. Did the District Court Plainly Err by Sentencing Moore to 18 Months' Imprisonment for His Third Violation of Supervised Release?

As this Court has explained:

"To find plain error, there must be: (1) error, (2) that is plain, and (3) that has affected the defendant's substantial rights." If we find that these conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error "seriously affect[s]

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    15

> the fairness, integrity or public reputation of judicial proceedings." . . . "Plain" error means that the legal rule is clearly established at the time the case is reviewed on direct appeal. "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.'"

United States v. Hesser, 800 F.3d 1310, 1324–25 (11th Cir. 2015) (first quoting United States v. Khan, 794 F.3d 1288, 1300 (11th Cir. 2015); then quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam); and then quoting United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam)).

Therefore, pursuant to this standard, there is no plain error if: (1) the explicit language of the statute does not specifically resolve the issue; (2) no precedent from the Supreme Court directly resolves the issue; and (3) no precedent from this Court directly resolves the issue. And reviewing the relevant statutory language as well as precedent from the Supreme Court and this Court, I conclude that there is no plain error established in this case.

First, the language of § 3583(e)(3) does not indicate that the total amount of time a defendant spends in prison for the underlying offense and subsequent violations of supervised release is limited to the statutory maximum sentence. Indeed, in John A. Cunningham, this Court interpreted § 3583(e)(3) to mean "that upon each revocation of supervised release a defendant may be sen-

16  LAGOA, J., Concurring in part and in result    20-11215, 20-11216

tenced to the felony class limits contained within § 3583(e)(3) without regard to imprisonment previously served for revocation of supervised release." 800 F.3d at 1293. And the only limitations the Court found with respect to subsequent sentences for violating supervised release were: (1) the limits provided for the specific felony classes; and (2) that "§ 3583(h) places an indirect constraint upon the total amount of revocation imprisonment a defendant may receive . . . by limiting post-imprisonment supervision," such that there is not a "risk for an unlimited cycle of imprisonment and supervised release." *Id.* at 1292–93.

Both the majority opinion and dissent agree that the district court's sentence of additional supervised release after the third post-revocation imprisonment violates this latter limitation. But the plain language of the statute does not impose any further relevant limitations, including that the total amount of time a defendant spends in prison cannot exceed the statutory maximum sentence.

*Second*, as explained above, neither the Supreme Court's decision in *Apprendi* nor the plurality decision in *Haymond* directly resolves this issue. The dissent argues that, based on *Haymond*, it is common ground that the justices of the Supreme Court would not uphold a sentence that exceeds the statutory maximum sentence. But the plurality and concurring decisions in *Haymond* were expressly limited to § 3583(k), and therefore *Haymond* does not create any binding precedent regarding the constitutionality of a sentence of imprisonment imposed under § 3583(e). *See Marks*

20-11215, 20-11216 LAGOA, J., Concurring in part and in result    17

v. *United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest ground." (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))). And the fact that the justices indicated how they may vote on the issue raised here is not precedent "directly resolving [the issue]." *Hesser*, 800 F.3d at 1325 (quoting *Lejarde-Rada*, 319 F.3d at 1291).

*Third*, as summarized above, there is no Eleventh Circuit precedent that directly addresses whether the cumulative sentence of imprisonment—inclusive of all sentences for revocation of supervised release and for the underlying offense—can exceed the statutory maximum sentence. Because no such case exists, I conclude that the district court could not have plainly erred because "the explicit language of [the] statute . . . does not specifically resolve [the] issue" and "there is no precedent from the Supreme Court or this Court directly resolving it." *Id.* (quoting *Lejarde-Rada*, 319 F.3d at 1291). I therefore concur in result only as to Part II.B. of the majority opinion, which affirms the district court's decision to sentence Moore to 18 months' imprisonment for the third revocation of his supervised release, resulting in a cumulative total of 162 months' imprisonment for both the underlying offense and the three revocations of supervised release. And I concur in full as to Parts II.A., II.C., II.D., and II.E. of the majority's opinion.

20-11215, 20-11216    NEWSOM, J., dissenting in part                 1

NEWSOM, Circuit Judge, dissenting in part:

The defendant here was convicted of a federal crime that carried a statutory maximum penalty of 10 years in prison plus three years of supervised release. Because any supervised release time can (upon the occurrence of certain conditions) be converted into prison time, the defendant's total statutory maximum penalty was 13 years in prison. Without convicting him of any new crimes, the district court sentenced the defendant to a total of 13 *and a half* years in prison. Because that sentence plainly violated the Fifth and Sixth Amendments inasmuch as it exceeded the statutory maximum of 13 years, I respectfully dissent from Part II.B. of the Court's opinion.[1]

I

After Anthony Moore made pipe bombs for an undercover agent, the federal government charged and convicted him under 26 U.S.C. § 5861(d). By statute, the district court was authorized to impose a maximum prison term of 10 years plus a maximum supervised-release term of three years. *See* 26 U.S.C. § 5871; 18 U.S.C. §§ 3559(a)(3), 3583(b)(2). The district court imposed the maximum terms. After serving his 10-year prison sentence, Moore violated his conditions of supervised release, and the district court

---

[1] For the balance of my dissent, I will use the term "principal opinion" to refer to Part II.B. Because Judge Lagoa concurs "in result only" with respect to Part II.B., *see* Lagoa Op. at 1, the discussion there represents only Judge Branch's view.

imposed a six-month revocation sentence.  After serving that six-month sentence, Moore violated his conditions again, and the district court imposed a second revocation sentence of 18 months.  Moore then violated his conditions yet again, and the district court imposed a third revocation sentence of another 18 months.  All told, then—10 years plus six months, plus 18 months, plus 18 months—the district court sentenced Moore to a total of 13 and a half years in prison, all pursuant to his original conviction.  On appeal, Moore challenges (among other issues) the constitutionality of the final revocation sentence.

## II
## A

It is bedrock American law that a defendant may be "constitutionally deprived of his liberty" as punishment for a crime only insofar as authorized by a "valid conviction." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  In order to secure such a valid conviction, the government must first afford the defendant due process of law and provide him the right to a jury trial.  *See* U.S. Const. amends. V, VI; *see also, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  And once the government secures a valid conviction, a court can imprison the defendant only to the extent authorized by law.  So if (as here) the government convicts a defendant of a crime carrying a statutory maximum sentence of 13 years, then a court can imprison him for no longer than 13 years.

Although the parties and my colleagues discuss this principle by reference to the Supreme Court's decision in *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000), and its progeny—and not erroneously so—we should be clear that the principle itself dates back much further. As the Supreme Court put it 40 years ago, a defendant has a "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress." *Whalen v. United States*, 445 U.S. 684, 690 (1980). It is "axiomatic," we said about a decade later, that a court may not impose a prison term "beyond that which is authorized by statute." *United States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993); *see also United States v. Masters*, 978 F.2d 281, 286 (7th Cir. 1992) (explaining that "[c]onviction at trial" constitutionally authorizes "depriving the defendant of liberty for any term up to the maximum prescribed by statute"). Ultimately, this foundational rule derives from the Fifth and Sixth Amendments and the common-law history out of which they arose. *See* U.S. Const. amends. V, VI; *see also* Magna Carta ch. 29 (1215); Thomas Cooley, *The General Principles of Constitutional Law in the United States of America* 224 (1880).

In *Apprendi*, the Supreme Court applied this principle in a new context and gave it fuller meaning. *Apprendi* concerned a legislative scheme that explicitly authorized a judge—as opposed to a jury—to increase a defendant's maximum sentence upon making additional findings by a mere preponderance of the evidence—as opposed to beyond a reasonable doubt. 530 U.S. at 468–69. The Court held that even that scheme was unconstitutional. *Id.* at 497. Nothing but a conviction supported by a finding of guilt beyond a reasonable doubt or a valid plea, the Court held, can "increase[] the

4              NEWSOM, J., dissenting in part        20-11215, 20-11216

penalty for a crime beyond the prescribed statutory maximum."
*Id.* at 490.  Importantly, the Court later clarified that for constitu-
tional purposes the "statutory maximum" that a judge can't ex-
ceed, even with express legislative sanction, is "the maximum sen-
tence [he] may impose *solely on the basis of the facts reflected in
the jury verdict or admitted by the defendant.*"  *Blakely v. Wash-
ington*, 542 U.S. 296, 303 (2004) (emphasis in original).  Thus, even
when authorized by the legislature, a judge alone cannot effect any
increase in the defendant's maximum penalty.  Once the conviction
is in, the maximum penalty is fixed, and nothing but a new, valid
conviction can extend it.

## B

In the federal system, a court may, pursuant to a single con-
viction, impose a two-part sentence: (1) a prison term, followed by
(2) a term of supervised release.  *See* 18 U.S.C. § 3583(a); *Mont v.
United States*, 139 S. Ct. 1826, 1834 (2019).  If, during the super-
vised-release term, a defendant violates his conditions of release,
the court can, through an abbreviated procedure, "revoke" the re-
lease and "require the defendant to serve in prison all or part of the
term of supervised release."  18 U.S.C. § 3583(e)(3).  Such a "revo-
cation sentence" converts all or part of the defendant's supervised-
release term into a prison term.

The constitutionality of revocation sentences has recently
generated a split at the Supreme Court.  One side holds that revo-
cation sentences can be—and routinely are—unconstitutional,
even when imposed within the bounds authorized by Congress.

20-11215, 20-11216    NEWSOM, J., dissenting in part    5

Under this view, represented by Justice Gorsuch's four-Justice plurality opinion in *United States v. Haymond*, a valid conviction can support the defendant's incarceration for the maximum original prison term, but no longer.  *See* 139 S. Ct. 2369, 2378 (2019) (plurality op.).  On this account, any revocation sentence beyond that maximum original prison term—again, even one within the terms authorized by Congress for the original conviction—constitutes a "new punishment" requiring full due-process and jury-trial rights.  *Id.*  So, to use the particulars of this case as an example, if a federal statute authorizes a maximum prison term of 10 years plus a maximum supervised-release term of three years, the maximum total constitutional prison term is 10 years, not 13.  *See id.*

The other side of the split holds that revocation sentences are generally constitutional, so long as they don't cause the total sentence to exceed the maximum prison term *plus* the maximum supervised-release term.  On this view—which, I'll say, seems right to me—although a revocation of supervised release may look like a new punishment, it was actually already baked into the original sentence.  *See Mont*, 139 S. Ct. at 1834 ("Supervised release is a form of punishment that Congress prescribes along with a term of imprisonment as part of the same sentence."); *see also Johnson v. United States*, 529 U.S. 694, 701 (2000).  As Justice Alito put it in *Haymond*, "[w]hen a jury finds a federal defendant guilty of violating a particular criminal statute, the maximum period of confinement authorized is the maximum term of imprisonment *plus* the maximum term of supervised release."  139 S. Ct. at 2391 (Alito, J.,

6              NEWSOM, J., dissenting in part        20-11215, 20-11216

dissenting) (emphasis added).  Thus, he explained, "a defendant sentenced to x years of imprisonment followed by y years of supervised release is really sentenced to a maximum punishment of x + y years of confinement, with the proviso that any time beyond x will be excused if the defendants abides by the terms of supervised release." *Id.* at 2390.  So, to carry the example forward, under a federal statute that authorizes a maximum prison term of 10 years and a maximum supervised-release term of three years, the defendant's total maximum prison term is 13 years, not 10.  Notably, although Justice Alito wrote in *Haymond* on behalf of four dissenters, Justice Breyer's separate concurring opinion expressed agreement with Justice Alito's assessment of how total sentence maximums should be computed.  *See id.* at 2385 (Breyer, J., concurring).

Although I read Justice Breyer's opinion to mean that Justice Alito's analysis of revocation sentences represented a majority view, we don't have to resolve the disagreement to decide this case.  It is common ground—at least at the Supreme Court—that a judge can't impose a total prison term exceeding the maximum prison term *plus* the maximum supervised-release term.  *See Haymond*, 139 S. Ct. at 2378 (plurality op.), 2390 (Alito, J., dissenting).  Some of the Justices would have further curtailed a court's sentencing power, but all seemed to agree that a sentence cannot exceed the *combined* terms of imprisonment and supervised release.

## C

The Court here defies this common ground—and, in so doing, carries us beyond where any Justice appears prepared to go.

20-11215, 20-11216    NEWSOM, J., dissenting in part        7

The government lawfully convicted Anthony Moore under 26 U.S.C. § 5861(d). As the principal opinion acknowledges, that statute authorized a maximum prison term of 10 years plus a maximum supervised-release term of three years. *See* Branch Op. at 4; 26 U.S.C. § 5871; 18 U.S.C. §§ 3559(a)(3), 3583(b)(2). Accordingly, setting aside the dispute that divided the Justices in *Haymond*, Moore's maximum total prison term was, at the very most, 13 years. Indeed, even the government conceded at oral argument in this case that "the statutory maximum for [Moore's] underlying firearm offense" was 13 years. *See* Oral Arg. at 21:30–55.

And yet, pursuant to a single § 5681(d) conviction, the district court sentenced Moore to 13 *and a half* years in prison. It did so by imposing the following four consecutive sentences: (1) 10 years on his original sentence; (2) six months for his first violation of supervised release; (3) 18 months for his second violation of supervised release; and (4) 18 months for his third violation of supervised release. Those four sentences totaled 13 and a half years—six months beyond the highest possible aggregate term of total imprisonment. The district court didn't afford Moore due process or the right to a jury trial before imposing the fourth sentence, nor did the government secure a new conviction. Therefore, to the extent that it caused Moore's total term of imprisonment to exceed 13 years, the fourth sentence was unconstitutional. It imposed a penalty beyond "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," *Blakely*, 542 U.S. at 303, and therefore violated

8              NEWSOM, J., dissenting in part       20-11215, 20-11216

Moore's "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress," *Whalen*, 445 U.S. at 690.

To be sure, we review here only for plain error.  *See* Branch Op. at 13–14; Lagoa Op. at 1.  But just as surely, the district court's error *was* "plain" inasmuch as it violated foundational American law, embodied (most recently, but hardly exclusively) in *Apprendi* and its progeny.  The district court's error also affected Moore's substantial rights by subjecting him to an additional six months in prison, and it undermined the "fairness, integrity, or public reputation" of judicial proceedings by causing an "unnecessary deprivation of liberty." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018); *see also* Fed. R. Civ. P. 52(b).

## D

The principal opinion rejects this analysis and upholds Moore's six-months-too-long sentence because it says that we held in a past case that "*Apprendi* does not apply to revocation proceedings." *See* Branch Op. at 17.  But in the case on which the principal opinion relies, *United States v. R. Scott Cunningham*, 607 F.3d 1264 (11th Cir. 2010), we had no reason to contemplate, let alone decide, the question before us today: whether a revocation sentence can be used to extend a prisoner's total imprisonment beyond his combined statutory maximums.  The government in *Cunningham* secured a conviction authorizing—as here—a maximum prison term of 10 years plus a maximum supervised-release term of three years. *See id.* at 1265–66; *see also* 18 U.S.C. §§ 1957, 3559(a)(3), 3583(b)(2).

20-11215, 20-11216    Newsom, J., dissenting in part            9

Pursuant to that conviction, the district court sentenced the defendant to two years in prison plus three years of supervised release. *Cunningham*, 607 F.3d. at 1266. After the defendant violated the conditions of his supervised release, the court imposed a four-month revocation sentence, bringing his total prison term to two years and four months, well within the combined statutory maximum of 13 years. *Id.* The defendant challenged his revocation sentence on a theory that outflanked even Justice Gorsuch's *Haymond* plurality. Any sentence based on the revocation of supervised release, the defendant argued, constituted new punishment requiring full due-process and jury-trial rights. *Id.* at 1266. We (sensibly) rejected that sweeping argument and adhered to the conventional view of supervised release that Justice Alito would later embrace in *Haymond. See id.* at 1268.

But again, Moore doesn't ask us to hold that all revocation sentences are unconstitutional. Rather, he accepts the conventional, less defendant-friendly view that revocation sentences are generally constitutional, and argues only that they can't cause a defendant's total prison time to exceed the combined maximum terms of imprisonment and supervised release. The *Cunningham* panel never even adverted to (or seemingly even imagined) the possibility of extending a defendant's total sentence beyond the combined statutory maximums, and so its decision doesn't control here. *See, e.g.*, *Crocker v. Beatty*, 995 F.3d 1232, 1255 (11th Cir.

10              NEWSOM, J., dissenting in part        20-11215, 20-11216

2021) (Newsom, J., concurring) ("[A] decision doesn't answer questions that aren't asked.").[2]

Tellingly, when asked point blank at oral argument for examples of other cases in which courts had blessed sentences exceeding the combined maximum terms of imprisonment and supervised release, the government could muster only *one*—an unpublished, two-paragraph, out-of-circuit case that was decided based on an *Anders* brief and over a dissent. *See United States v. Two Crow*, 781 F. App'x 562 (8th Cir. 2019). For its part, the principal opinion cites exactly *none*. And with good reason: Overwhelmingly—and to their great credit—district court judges have known not to impose revocation sentences that cause a defendant's

---

[2] The principal opinion doubles down on *Cunningham* by invoking the unremarkable proposition that one three-judge panel can't overrule another's decision just because the parties before it make new arguments. *See* Branch Op. at 20–21. But the principal opinion misses the point. As I hope I've made clear, I'm not out to overrule *Cunningham*, which I think was rightly decided. I'm just saying that today's case presents an altogether new and different question—one that wasn't, and couldn't have been, presented in *Cunningham*: whether a revocation sentence can be used to extend a prisoner's total imprisonment *beyond* his combined statutory maximums. Had the *Cunningham* panel reached out beyond the four corners of its case to answer the question presented in this one—by (oddly) proclaiming that the district court there could have sentenced the defendant not only to two years and four months, but also to more than 13 years—its proclamation would have constituted the most aggressive form of non-binding dicta. *See Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1360 (11th Cir. 2014).

20-11215, 20-11216    NEWSOM, J., dissenting in part         11

total prison time to exceed the aggregate maximum prison and supervised-release terms.  Moore's sentence in this case was aberrant in the extreme—and unlawful.

### III

The district court deprived Anthony Moore of his liberty for longer than was authorized by his combined maximum terms of imprisonment and supervised release.  Because that was lawless, I would have vacated the final six months of Moore's sentence.  I respectfully dissent from the Court's refusal to do so.