**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10788

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE ROMEU,
a.k.a. Joseito,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:91-cr-10021-DSL-1

_____

Before ROSENBAUM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Romeu, a federal prisoner proceeding *pro se*, appeals the denial of his motion for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A).  Romeu is serving a life sentence for drug-trafficking offenses committed more than thirty years ago.  He now seeks early release under a recent guideline amendment, U.S.S.G. § 1B1.13(b)(6), based on intervening changes in the law and his unusually long sentence.  After careful review, we must affirm the denial of his motion.

## I.

In 1995, a jury convicted Romeu of conspiracy to distribute marijuana and cocaine, possession with intent to distribute marijuana, possession with intent to distribute cocaine, and attempted possession with intent to distribute cocaine.  He was acquitted of three other drug offenses.  The jury did not make any findings about the quantity of drugs involved.

Romeu's presentence investigation report ("PSR") detailed the offense conduct as follows.  Between 1986 and 1991, Romeu led an organization that transported "numerous large shipments of marijuana and cocaine from South America, Jamaica and the Bahamas" to South Florida.  He used a fleet of boats operated by "numerous" captains and employees to pick up shipments located on islands or dropped into the ocean by airplanes, then transported shipments to his dockside house, where they were loaded into vehicles for distribution to stash houses.  Romeu "supervised and monitored" every shipment via radio.  His organization transported at least 61,100 pounds of marijuana and 3,700 kilograms of cocaine.  Then, after the grand jury issued its indictment, he evaded arrest for over three years.

Applying the 1994 Sentencing Guidelines, the PSR calculated that the offense involved the equivalent of 767,773 kilograms of marijuana, far exceeding the 30,000-kilogram threshold for the highest base offense level of 38. The PSR also added two levels because Romeu's coconspirators carried firearms, four levels because he was an organizer or leader of the offenses, and two levels for obstruction of justice because he falsely testified that he was just a boat mechanic not involved in drug trafficking. The total offense level of 46 was reduced to the maximum level of 43, which, when combined with a criminal-history category of I, yielded a guideline range of life imprisonment. Romeu filed various objections and suggested he should be held accountable for only an amount equal to 169,878 kilograms of marijuana.

It's not clear from the record which drug quantity the original sentencing court relied on to sentence Romeu. But in any case, the district court sentenced Romeu to concurrent terms of life imprisonment, under then-mandatory guidelines, and we affirmed his convictions and sentence on direct appeal. *United States v. Romeu*, 106 F.3d 416 (11th Cir. 1997) (table).

Among other requests for post-conviction relief, in 2014, Romeu filed a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on Amendment 782 to the Sentencing Guidelines, which broadly reduced the penalties for drug crimes by revising the drug-quantity table in U.S.S.G. § 2D1.1(c). The district court denied the motion, and we affirmed. *See United States v. Romeu*, 639 F. App'x 622, 623 (11th Cir. 2016). We held that Romeu

was not eligible for a reduction under § 3582(c)(2) because his base offense level would not be different even after Amendment 782, since his own proposed drug-quantity figure exceeded the 90,000-kilogram threshold for the highest base offense level under the amended table. *Id.*

More recently, in November 2024, Romeu filed a motion for early release under 18 U.S.C. § 3582(c)(1)(A). He argued that he established extraordinary and compelling reasons for release under a recent guideline amendment, U.S.S.G. § 1B1.13(b)(6). That amendment permits long-serving defendants to obtain a sentence reduction when an intervening change in law would produce a gross disparity between the defendant's "unusually long sentence" and his likely sentence under current law. Romeu based his claim of a gross disparity on the application of Amendments 782, 821, and 826 to the Sentencing Guidelines, noting that even a four-level reduction in his guideline range would make a life sentence unlikely today. Romeu also argued that the 18 U.S.C. § 3553(a) sentencing factors favored early release. In support, he noted that he was 72 years old, that he had served more than thirty years as a model prisoner, and that the Bureau of Prisons had assessed him as having a minimal risk of recidivism.

The government opposed any reduction to Romeu's sentence. It first asserted that the new guideline amendment, § 1B1.13(b)(6), was "unreasonable and therefore invalid" because, in its view, the Sentencing Commission could not authorize sentence reductions based on nonretroactive legal developments. The

government also argued that § 1B1.13(b)(6) didn't apply because Romeu failed to show that his life sentence was "unusually long" or that a change in law created a gross disparity in his sentence. Finally, the government maintained that the § 3553(a) factors did not favor early release. As the government saw things, based on his conduct before and during trial, "Romeu has never accepted responsibility for his crimes and has shown no remorse for his actions."

After Romeu filed a reply, the district court denied Romeu's motion. The court largely adopted the government's arguments with respect to Romeu's eligibility under § 1B1.13(b)(6) and whether the § 3553 factors supported early release. In particular, the court found that "Romeu's early release would undermine respect for the law and the need to avoid disparate sentences," and that he had "never accepted responsibility for his crimes and has shown no remorse for his actions." The court didn't address the government's challenge to the validity of § 1B1.13(b)(6). Romeu now appeals.

## II.

We generally review de novo whether a defendant is eligible for a sentence reduction under § 3582(c)(1)(A). *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021). We review a district court's denial of an eligible defendant's request for compassionate release under § 3582(c)(1)(A) for an abuse of discretion. *Id.* "A district court abuses its discretion if it applies an incorrect legal

standard, follows improper procedures in making its determination, or makes clearly erroneous factual findings." *Id.*

A court may not modify a sentence once it has been imposed, except as permitted by statute. 18 U.S.C. § 3582(c); *United States v. Harris*, 989 F.3d 908, 909 (11th Cir. 2021). As relevant here, § 3582(c)(1)(A) permits a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). To grant a reduction under this provision, the court must find that (1) there are "extraordinary and compelling reasons" for doing so, (2) the § 3553(a) factors support the reduction, and (3) a reduction is consistent with the Commission's policy statements. *Giron*, 15 F.4th at 1346. Because all three conditions are necessary, "the absence of even one would foreclose a sentence reduction." *United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021).

Romeu seeks a sentence reduction for an "unusually long sentence" under U.S.S.G. § 1B1.13(b)(6), which took effect in November 2023. That provision states in full,

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be

imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

This language states three conditions before a reduction under § 1B1.13(b)(6) is authorized: (1) the defendant is serving an "unusually long sentence"; (2) the defendant has served at least 10 years of that sentence; and (3) a change in law produces "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* If these conditions are met, the change in law "*may* be considered in determining whether the defendant presents an extraordinary and compelling reason," after giving "full consideration of the defendant's individualized circumstances." *Id.*; *see Biden v. Texas*, 597 U.S. 785, 802 (2022) ("[T]he word 'may' clearly connotes discretion."). Outside § 1B1.13(b)(6)'s narrow circumstances, changes in law are not alone grounds for a sentence reduction. U.S.S.G. §. 1B1.13(c).

Here, Romeu has not shown that the district court erred or abused its discretion in denying a reduction under § 1B1.13(b)(6). In the district court, Romeu identified three potential changes in law that produced a sentencing disparity: Amendments 782, 821, and 826. We have already held that Amendment 782, which amended the drug quantity table, didn't affect Romeu's guideline range even using his own proposed drug quantity. *See Romeu*, 639 F. App'x at 623.

Amendment 821 added a two-level decrease for certain defendants with zero criminal-history points. *See* U.S.S.G. § 4C1.1. But that decrease applies only when a defendant meets specific additional criteria, including that "the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role)." *Id.* § 4C1.1(a)(10). Here, Romeu received a four-level aggravating role adjustment for being an organizer or leader of the offenses, *see* U.S.S.G. § 3B1.1(a), so Amendment 821 doesn't help him, either.

That leaves Amendment 826, which amended the relevant-conduct guideline to exclude acquitted conduct from guideline calculations. *See* U.S.S.G. § 1B1.3(c). There is no dispute that Romeu's PSR relied in part on acquitted conduct. Nonetheless, Amendment 826, as a nonretroactive guideline, does not make Romeu eligible for relief under § 1B1.13(b)(6). Subsection (b)(6) permits a reduction only when the defendant relies on a "change in the law (*other than an amendment to the Guidelines Manual that has not been made retroactive*)." Because Amendment 826 is a guideline amendment "that has not been made retroactive," the district court properly declined to grant a reduction on that ground.

For the first time on appeal, Romeu also contends that the Supreme Court's decisions in *Alleyne* and *Apprendi* count as intervening changes in law. *Alleyne* and *Apprendi* made clear that drug-quantity findings that increase a defendant's statutory sentencing range must be found by a jury beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 116 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). We have held that the legal rule

established in *Alleyne/Apprendi* does not apply retroactively. *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285–86 (11th Cir. 2014). Romeu asserts that, because no drug quantity was found by the jury, his convictions would carry statutory maximums of no more than twenty years, creating a gross disparity with his life sentence.

Because this argument was not raised before the district court, we review for plain error only. *United States v. Moore*, 22 F.4th 1258, 1265 (11th Cir. 2022); *United States v. Duncan*, 400 F.3d 1297, 1301 (11th Cir. 2005). "We have discretion to correct an error under the plain error standard where (1) an error occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Duncan*, 400 F.3d at 1301. An error is "plain" when the "legal rule is clearly established at the time the case is reviewed on direct appeal." *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015). So "where neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000).

Romeu has not shown that the district court's failure to consider or grant relief based on *Alleyne/Apprendi* was plain. Several of our sister circuits have held that § 1B1.13(b)(6) does not permit courts to grant sentence reductions under § 3582(c)(1)(A) based on nonretroactive legal developments. *See, e.g.*, *United States v. Bricker*, 135 F.4th 427, 437–38, 441–42 (6th Cir. 2025) (holding that nonretroactive changes in law cannot be "extraordinary and compelling

reasons" under § 3582(c)(1)(A)); *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025) ("[A] non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence."). And the Supreme Court recently heard argument on this question, *see Rutherford v. United States*, No. 24-820 (U.S. Nov. 12, 2025). Because we have not addressed this question and other circuits are split, Romeu cannot show that the court plainly erred by failing to grant relief under § 3582(c)(1)(A) based on the nonretroactive rule of *Alleyne/Apprendi*. *See Aguillard*, 217 F.3d at 1321.

For these reasons, we affirm the district court's denial of Romeu's § 3582(c)(1)(A) motion. Because Romeu has failed to satisfy the third condition of § 1B1.13(b)(6), we need not resolve whether the court abused its discretion in its consideration of the § 3553(a) factors, or whether § 1B1.13(b)(6) was a valid exercise of the Sentencing Commission's authority.

**AFFIRMED.**